## GRAY *v.* STATE OF MARYLAND

[No. 309, September Term, 1968.]

*Decided June 30, 1969.*

*Motion for rehearing filed July 7, 1969; denied July 7, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, MCWILLIAMS, FINAN and SINGLEY, JJ.

*Karl G. Feissner,* with whom were *William L. Kaplan* and *Thomas P. Smith* on the brief, for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr.,* and *Vincent J. Femia, State's Attorney* and *Assistant State's Attorney,* respectively, for Prince George's County, on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

The Circuit Court for Prince George's County (Bowen, J.) denied the motions of an accused for judgment of acquittal made at the end of the State's case and when all

the evidence was in, and the jury found him guilty of armed robbery. The Court of Special Appeals reversed the judgment on the sole ground of the insufficiency of evidence as a matter of law and ordered a new trial in the face of the accused's specific request and strong argument that the remand properly should be for the entry of a judgment of acquittal, the judgment he says would have been entered at the trial had the judge realized that the evidence was insufficient to permit the jury to convict.

We granted certiorari because of the importance of the question presented by appellant's petition.

Until 1950 this Court lacked power to pass upon the sufficiency of the evidence in a criminal case. Because of the provisions of § 5 of Art. XV of the Constitution of Maryland that "[i]n the trial of all criminal cases, the Jury shall be the Judges of Law as well as of fact," this Court did not intrude on the jury's constitutional right and duty and analogously would not pass on the sufficiency of the evidence when the case was tried by the court without the aid of a jury. *Abbott v. State*, 188 Md. 310, 313 (1947). However, the citizens amended § 5 of Art. XV of the Constitution effective December 1, 1950, to provide that, although the jury remained the judge of the law as well as the fact, "the Court may pass upon the sufficiency of the evidence to sustain a conviction." The constitutional addition was implemented by Ch. 596 of the Laws of 1949, now Code (1968 Cum. Supp.), Art. 27, § 593, and the present Maryland Rule 755 providing for a motion of judgment of acquittal for insufficiency of the evidence at the end of the State's case and at the close of all the evidence, with the sanction of § 593 of Art. 27 that "[i]f the motion is denied the defendant may have a review of such ruling on appeal."

After the January 1, 1950 effective date of this Court's General Rules of Practice and Procedure there was provided, by Rule 7 (c) of Part Four (Code 1951, Vol. 3, p. 4889) (substantially what is now Maryland Rule

388

1086), appellate review of the sufficiency of the evidence in criminal cases tried without a jury.

Since this Court has had the power to review the sufficiency of the evidence it has done so in a number of cases, and when it has reversed for insufficiency its course has not been uniform. In some cases we have remanded for a new trial,[1] in others directed an acquittal.[2] The Court of Special Appeals has followed the same course. There is ample sustaining precedent for these actions in the courts of the various states and in the federal courts. See the

1. *New Trial Granted*

Wright v. State, 198 Md. 163, 173 (1951).

Estep v. State, 199 Md. 308, 314 (1952)—Opportunity given to State to produce additional medical evidence as to effect of drug.

Thomas v. State, 206 Md. 49, 58 (1954).

Felkner v. State, 218 Md. 300, 311 (1958)—"[R]emanded for new trials so that the State may offer evidence of felonious intent if that evidence is available to it."

Johnson v. State, 227 Md. 159, 165 (1961).

Sippio v. State, 227 Md. 449, 453 (1962)—State given opportunity to prove existence of corporation.

Cooper v. State, 231 Md. 248, 255 (1963).

Kucharczyk v. State, 235 Md. 334, 338 (1964). "For some unexplained reason, the manager of the public lavatory and the other man present, both of whom, according to the prosecuting witness, observed the alleged assault in the lavatory, were not called as witnesses."

Matthews v. State, 237 Md. 384, 389 (1965). "Guilt inferred only from the fact of the unexplained possession of recently stolen goods * * * ordinarily cannot be imputed to a companion of the possessor without other supporting evidence * * *."

Mercer v. State, 237 Md. 479, 485 (1965)—State given opportunity to prove market value of stolen goods in grand larceny charge.

2. *Directed Acquittal*

Krauss v. State, 216 Md. 369, 373-374 (1958)—Prosecuting witness' testimony showed defendant not guilty.

Levy v. State, 225 Md. 201, 207 (1961), cert. denied, 368 U.S. 865 (1962)—Prosecuting witness' testimony showed defendant not guilty of these particular crimes.

Monfred v. State, 226 Md. 312, 324 (1961), cert. denied, 368 U.S. 953 (1962)—A question of law as to the obscenity of certain materials.

Veney v. State, 227 Md. 608, 615 (1962)—Convicted of two inconsistent crimes, one reversed and the other affirmed, in accordance with the evidence in the record.

Fletcher v. State, 231 Md. 190, 193 (1963)—Inconsistent verdicts, remanded to trial court to determine which was supported by the evidence, and enter not guilty in the other.

Crawford v. State, 231 Md. 354, 364 (1963)—Evidence showed self-defense as a matter of law.

case note on *Lambert v. State*, 196 Md. 57 (1950) (the first case to pass on the sufficiency of the evidence, which reversed without a new trial), entitled *Should Reversal of Criminal Conviction Because of Insufficient Evidence, under the New Criminal Rules, Be With or Without a New Trial?* in 13 Md. L. Rev. 52, 55-57, wherein the author says:

> "While in England, the Court of Criminal Appeal has no power to order a new trial on reversal of a criminal conviction, in this country according to the almost universally prevailing practice, appellate courts do possess such power. Most applicable statutes and Rules of Court either expressly leave the matter up to the discretion of the appellate tribunal or are so interpreted as to confer such discretion upon the court. A search of the leading works on criminal law and procedure reveals that there has been a surprisingly small amount of discussion devoted by most writers to this subject. Perhaps this is in some measure attributable to the fact that in a large number of the cases, like in the *Lambert* case, no reasons are assigned for the decision of the appellate court to grant or not to grant a new trial when reversing for insufficiency, or if such reasons are assigned, they are not always clearly articulated.

> "Typical among the reasons assigned for a determination *not* to grant a new trial, when, upon occasion the courts do assign their reasons, are that it did not appear that any more witnesses would be available for the state in a new trial, because the state had apparently fully developed its case in the trial court, because it appeared from the record that the state could not make a better case on retrial, because the state had conceded on appeal that the preponderance of evidence was in the defendant's fa-

vor, or because it would be 'unjust' to subject the defendant to another trial after the evidence had been found insufficient to sustain a conviction in either of two previous trials.

"On the other hand, new trials *have* been granted because the appellate tribunal thought that there was a possibility that upon a new trial further corroboration might be introduced when such corroboration was held to have been lacking at the first trial, because 'the justice of the case demands' that a new trial be granted, because it was felt that the facts were capable of being more fully developed at a subsequent trial both by the state and by the defense, or because of the inconclusive character of the evidence in the trial court.

"With standards as general as these, it is not surprising that differences in practice are to be found throughout the country. For example, it has been held in one jurisdiction that if there is not a scintilla of evidence in the record to incriminate the appellant, the court must reverse without a new trial, while in another jurisdiction although the evidence 'wholly failed' to connect the defendant with the crime, the court nevertheless upon reversal remanded for new trial 'so that if the prosecutor has other evidence he may feel justified in proceeding with another trial.' Some courts appear to favor the granting of a new trial after reversal except in the most extreme cases, while others tend contrawise to grant new trials only when it is obvious from the record that a better case can be made by the state on retrial. In at least one jurisdiction, the decision whether to grant a new trial is left to the discretion of the *trial* court instead of the appellate court."

It has been held at the highest level that there is no

constitutional obstacle to remanding a case for a new trial after reversal for insufficiency of the evidence. In *Bryan v. United States*, 338 U.S. 552, 94 L. Ed. 335 (1950), the Supreme Court upheld the action of a federal Court of Appeals in ordering a new trial (because it felt the evidentiary defect could be remedied in another trial) under such circumstances. Rule 29 of the Federal Rules of Criminal Procedure, like Maryland Rule 755 (to which it was equated in *Tull v. State*, 230 Md. 152, 155 (1962)), provides for motions for judgment of acquittal at the end of the government's case and at the close of all the evidence. The accused in *Bryan* contended that the appellate court was bound by Rule 29 and must direct entry of a judgment of acquittal, for which he had duly moved at trial, after reversing his conviction. The Supreme Court did not agree, holding that Rule 29 controlled only the trial court and that the power of the reviewing court stemmed from § 2106 of the Judicial Code (28 U.S.C. § 2106) which authorizes that court to:

> "affirm, modify, vacate, set aside or reverse any judgment, decree, or order * * * and [to] remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."

Justices Black and Reed, concurring, thought the case should be remanded for the judge in the District Court to decide between a judgment of acquittal and a new trial. The Supreme Court also explicitly rejected Bryan's plea that to require him to stand trial again would be placing him twice in jeopardy, saying:

> "He sought and obtained the reversal of his conviction, assigning a number of alleged errors on appeal, including denial of his motion for judgment of acquittal. '* * * where the accused successfully seeks review of a conviction, there is no double jeopardy upon a new trial.' *Louisi-*

*ana ex rel. Francis v. Resweber,* 329 U. S. 459, 462, 91 L. ed. 422, 425 * * *." [338 U. S. at 560]

The powers given the federal appellate courts by 28 U.S.C. § 2106 are given the Court of Special Appeals by the Maryland Rules as follows:

"Rule 1070.

"Except as otherwise provided by Rules 1035 (Dismissal of Appeal) and 1071 (Remand), this Court will either affirm or reverse the judgment from which the appeal was taken, or direct the manner in which it shall be modified, changed, or amended."

"Rule 1071.

"a. If it shall appear to this Court that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment from which the appeal was taken, or that the purposes of justice will be advanced by permitting further proceedings in the cause, either through amendment of the pleadings, introduction of additional evidence, or otherwise, then this Court, instead of entering a final order affirming, reversing or modifying the judgment from which the appeal was taken, may order the case to be remanded to the lower court. Upon remand to the lower court, such further proceedings shall be had by amendment of the pleadings, introduction of additional evidence, or otherwise, as may be necessary for determining the action upon its merits as if no appeal had been taken and the judgment from which the appeal was taken had not been entered; provided, however, that the order entered by this Court in remanding said case, and the opinion of this Court on which said order is passed, shall be conclusive as to the points finally decided thereby. In such an order re-

manding a case, this Court will express the purpose for so remanding and in its opinion filed with said order will determine all questions which may have been properly presented.

"b. If this Court shall reverse the judgment for error in the judgment or in the sentence, this Court will remand the case to the lower court in order that such court may pronounce the proper judgment or sentence."

"Rule 1074.

"Where the judgment from which the appeal was taken shall be affirmed or reversed by this Court and it shall appear to this Court that a new trial ought to be had, such new trial will be awarded and the case remanded to the lower court therefor."

We conclude that the practice of remanding for a new trial after reversal for insufficiency of the evidence rather than remanding for entry of a judgment of acquittal, is permissible. We perceive, however, some judicial tendency or trend towards recognition of the logic of appellate direction for the entry of a judgment of acquittal if the state fails to prove its case in the trial court.

In *Sapir v. United States*, 348 U. S. 373, 99 L. Ed. 426 (1955), the Court of Appeals reversed and remanded with instructions to dismiss the indictment of conspiracy to defraud the United States on the ground that the evidence was insufficient to convict. The government moved to amend the judgment of the Court of Appeals by the granting of a new trial because of newly discovered evidence and the Court of Appeals granted the government's motion. The Supreme Court in an opinion on certiorari said (348 U. S. 373) :

"We believe that the judgment of the Court of Appeals of October 20, 1954, reversing and remanding this cause with instructions to dismiss the indictment was correct. It is not necessary for us to pass on the question presented

under its subsequent judgment of November 17, 1954, directing a new trial. We vacate the latter judgment, which directed the new trial, and we reinstate the former one which instructed the trial court to dismiss the indictment."

Later, in *Forman v. United States,* 361 U. S. 416, 4 L.Ed.2d 412 (1960), the Supreme Court, relying heavily on the *Bryan* case, approved what it had disapproved in *Sapir,* saying (361 U. S. at 425-426) :

"While petitioner contends that here the action of the Court of Appeals on rehearing was based on new evidence, as in Sapir, this is incorrect. Here there was no lack of evidence in the record. As the Court of Appeals pointed out, 'The jury was simply not properly instructed.' 264 F. 2d, at 956. On the other hand, the order to dismiss in Sapir was based on the insufficiency of the evidence, which could be cured only by the introduction of new evidence, which the Government assured the court was available. Moreover, Sapir made no motion for a new trial in the District Court, while here petitioner filed such a motion. That was a decisive factor in Sapir's case. See concurring opinion, 348 U. S., at 374. Furthermore, the power of the Court of Appeals to revise its original judgment and order the new trial on rehearing was not questioned in Sapir."

See also *Yates v. United States,* 354 U. S. 298, 1 L.Ed.2d 1356 (1957), in which the Court reversed Smith Act convictions of a number of appellants, remanding some for a new trial and ordering acquittals to be entered as to others.

In *People v. Brown,* 241 N.E.2d 653 (1968), the Appellate Court of Illinois, First District, read *Sapir* and *Forman* to permit it to find impermissible double jeopardy in a retrial after reversal for insufficiency of evi-

dence although a new trial after reversal for other errors in the trial would, it thought, constitute "permissible double jeopardy." The Court said (241 N.E.2d at pp. 659, 663-664) :

"Thus, the issue now presented is whether the State should be allowed a second chance to meet its burden of proof in a case in which (1) it had failed to adduce sufficient evidence to support a conviction at the trial, and (2) no material evidence offered by the State had been erroneously excluded or stricken. We are convinced that the State is not entitled to this kind of opportunity to rehabilitate its case at the expense of defendant's right to acquittal on the evidence which the State did see fit to present.

"A necessary corollary to our conclusion (that the evidence was insufficient to support defendant's conviction) is that a judgment of acquittal should have been entered by the trial court. Had such a judgment been entered after a trial on the merits, defendant would have been discharged.

"We come to the conclusion, therefore, that a second trial after reversal does constitute a second jeopardy which is, nevertheless, countenanced in some cases because required in the interest of justice. The basic concern of the criminal law in preserving the delicate and difficult balance between the security of the community and the rights of the individual accused, has dictated the rule that a criminal defendant who is successful on appeal may be retried. But this rule should not be applied to all reversals. When a conviction is set aside because of prejudicial occurrences or trial errors, the reviewing court determines only that the accused did not receive the fair trial which was his due; it does not determine that he was entitled to an acquittal. In

this type of case, therefore, the security of the community requires retrial. At the same time, the new trial in such a case does not constitute an infringement of the rights of the accused because he will then receive the fair trial which had been denied him — precisely the relief to which he is entitled under the circumstances, and, with no exceptions known to us, the relief specifically requested by the appellant.

"On the other hand, when an accused is acquitted at trial, or when his conviction is reversed on appeal because of the insufficiency of the evidence, the results are the same so far as his relationship with society is concerned. He cannot reasonably be deemed a continuing danger to the community in one instance and not in the other. These extremes in result should not be left to the fortuitous circumstance of what court it is which decides that there was not enough evidence to establish his guilt. Here, therefore, the balance is seen to be tipped the opposite way, since there can be no infringement of the right to community security when the defendant is released on this ground by either court, whereas, in our opinion, his right against double jeopardy would be denied equally by a retrial order in either court.

"The reason for the reversal should thus control the decision as to whether or not there should be another trial."

In *State v. Moreno* (N. M. 1961), 364 P. 2d 594, the court held that "[t]he effect of a reversal [by the appellate court] for lack of sufficient evidence to support a conviction is not different from an acquittal by the jury and requires that the defendant be discharged * * *." See also *Campbell v. United States* (D.C. Cir. 1963), 316 F. 2d 681; *Cephus v. United States* (D.C. Cir. 1963), 324 F. 2d 893; and *Borum v. United States* (D.C. Cir. 1967),

380 F. 2d 595, all holding that an acquittal should be granted if the appellate court reversed for insufficiency of the evidence.

We conclude that if the record before the Court of Special Appeals indicates that additional probative evidence of guilt can be adduced by the State at another trial necessitated by the insufficiency of the evidence, a new trial should be awarded after a reversal if the interests of justice appear to require it. If the record indicates that no additional probative evidence can be so adduced, the entry of a judgment of acquittal should be directed. If the Court of Special Appeals cannot determine from the record whether or not additional probative evidence can be produced on a retrial, and the interests of justice appear to require it, the Court should vacate the judgment and remand the case with directions to the trial court (a) to hold a new trial if the State within a specified time can satisfy the court that it can produce additional probative evidence, or (b) to enter a judgment of acquittal if the State cannot preliminarily so satisfy the court. See *United States v. Roe* (W.D. Mo., Oliver, J. 1963), 213 F. Supp. 444, wherein the court said:

"I do not think the ends of justice would best be served by automatically allowing the Government another chance unless it is able to make a preliminary showing that it has competent substantial evidence that could be adduced on a second trial that could be said to make a jury issue in regard to the crucial question * * *.

"If such evidence is available, the Government can advise the Court promptly as to the names of its intended witnesses, the nature of their evidence and of its desire for a second trial. When and if that data is presented, we will then determine whether a new trial will be granted. If the Government does not request a new trial and submit the data just mentioned (which we may or may not adjudge to be suffi-

398

cient to warrant a new trial) within five (5)·
days of this memorandum and order, then the
verdict will be set aside and, pursuant to the
power conferred by Rule 29 (b) of the Rules
of Criminal Procedure, a judgment of acquittal
will be entered."

Similarly, in *Riggs v. United States* (5th Cir. 1960),
280 F. 2d 949, 955:

"Instead of accompanying such reversal [for in-
sufficiency of the evidence] with directions to
acquit, the cause is remanded so that a re-trial
may be had, if the Government can produce ad-
ditional evidence which, in the opinion of the
district court, will warrant a retrial of the case
[citing *Bryan* and *Sapir*]."

See also on this point *Amador Beltran v. United States*
(1st Cir. 1962), 302 F. 2d 48, 52; *State v. Bates* (Idaho
1941), 117 P. 2d 281, and generally *People v. Malinsky*
(N.Y. 1965), 209 N.E.2d 694, 700-701, 262 N.Y.S.2d 65,
74, *subsequent proceedings,* 278 N.Y.S.2d 15 (Sup. Ct.
Queens Co.), 225 N.E.2d 748, 279 N.Y.S.2d 20; *Common-
wealth v. Turner* (Pa. 1957), 133 A. 2d 187, 200; *People
v. Ibom* (Ill. 1962), 185 N.E.2d 690, 696; *People v. Evans*
(Ill. 1962), 179 N.E.2d 657, 660; *People v. Boyd* (Ill.
1959), 161 N.E.2d 311, 315.

The view we have taken of the problems before us is
prompted by the reasons that led the Supreme Court in
*United States v. Ewell,* 383 U. S. 116, 121, 15 L.Ed.2d
627, 631 (1966), to say:

"It has long been the rule that when a defen-
dant obtains a reversal of a prior, unsatisfied
conviction, he may be retried in the normal
course of events. United States v. Ball, 163 U.
S. 662, 671-672, 41 L. Ed. 300, 303, 16 S. Ct.
1192; United States v. Tateo, 377 U. S. 463,
465, 473-474, 12 L.Ed.2d 448, 450, 455, 84 S.
Ct. 1857. The rule of these cases, which dealt

with the Double Jeopardy Clause, has been thought wise because it protects the societal interest in trying people accused of crime, rather than granting them immunization because of legal error at a previous trial, and because it enhances the probability that appellate courts will be vigilant to strike down previous convictions that are tainted with reversible error."

We recall also that in the course of jurisprudential navigation logic can be a deceptive compass indeed and that the life of the law has been experience, not logic. The judgment and mandate of the Court of Special Appeals will be vacated and the case is remanded to that Court for further consideration in light of the views herein set forth.

> *Judgment and mandate vacated and case remanded to the Court of Special Appeals for further consideration in light of the view expressed in the opinion herein. Costs to be paid by the County Commissioners for Prince George's County.*